CHICAGO & A. R. CO. v. INTERSTATE COMMERCE COMMISSION.

ILLINOIS CENT. R. CO. v. SAME.

(Circuit Court, N. D. Illinois, E. D. June 29, 1908.)

Nos. 29,115, 29,116.

CARRIERS (§ 32*)—INTERSTATE COMMERCE—DISCRIMINATION BY RAILROAD—DISTRIBUTION OF CARS TO COAL MINES.

It is a charter duty of railroads to provide cars, as well as tracks and locomotives and in the distribution of cars by an interstate railroad company among coal mines on a percentage basis in times of shortage of cars, private cars owned by shippers or consignees, which have no right upon the company's tracks except by virtue of its charter, must be considered as leased to it and as forming a part of its commercial equipment, and while the owner is entitled to the exclusive use of such cars, they are to be counted against the mine as a part of its percentage in the distribution, and this even though the particular owner does only an intrastate business; the carrier having no right under the interstate commerce law to discriminate in favor of local commerce, as against interstate or foreign commerce. The same rule also applies to fuel cars of foreign railroad companies, sent to the mines to be loaded with coal and transported to their lines for their own use; the fact that they are also common carriers making no distinction between them and other consignees. But cars of the distributing carrier used for its own fuel supply which are loaded and delivered to it at the mine tipple, are not engaged in transporting a commodity in commerce, but in the operating service of the company, and not to be counted in its distribution of cars as a part of its commercial equipment, although they are to be counted in reduction of the percentage to which the mine loading them is entitled which is not based on its output as a producer of coal, but as a shipper, and should be fixed by the quantity it offers for transportation in commerce.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*

Duties and liabilities of carriers as to furnishing facilities for transportation, see note to Harp v. Choctaw, O. & G. R. Co., 61 C. C. A. 414.

What constitutes an unlawful preference or discrimination by a carrier under interstate commerce regulations, see note to Gamble-Robinson Commission Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

In Equity. Suits by the Chicago & Alton Railroad Company and by the Illinois Central Railroad Company against the Interstate Commerce Commission. Injunction granted against enforcement of a certain part of an order of the commission.

These causes are substantially alike and were submitted together for final decree upon bill and answer.

Complainants are interstate common carriers. Along the line of each in Illinois are mining districts within which the operators are dependent upon one or the other of these carriers to get to market their product in excess of local consumption.

Following are the classes of cars involved: (1) Coal cars owned by complainants and used by them in hauling coal for shippers generally; (2) private cars owned by coal mining companies or by their customers and used in conveying coal from the mines to the customers; (3) fuel cars owned by foreign railroads and used on complainants' roads in hauling coal from the mines to the delivery points for the foreign railroads; (4) fuel cars owned by complainants and used by them in carrying coal from the mines to their own coal chutes. Complainants purchase no coal except for their own use.

The greater part of the year there is more equipment at hand than there is coal to haul. But during the winter months a car shortage generally oc-

curs. Prior to April 13, 1908, complainants were accustomed to deal with a shortage of coal cars in this way: They rated each mine according to the relation its average producing capacity bore to the average producing capacity of the district in which it was located, and they distributed to each mine its pro rata share of the available equipment of class 1, above enumerated; but they did not count or in any way take into consideration the available equipment of classes 2, 3, and 4.

On April 13, 1908, the Interstate Commerce Commission, in a proceeding duly pending, made the following order:

"It is ordered that the defendants, the Chicago & Alton Railroad Company, the Chicago, Peoria & St. Louis Railway Company of Illinois, and the Illinois Central Railroad Company, be, and they severally are hereby notified and required, on or before the 1st day of July, 1908, to cease and desist, and during a period of at least two years thereafter to abstain, from maintaining and enforcing the present practice or regulation of failing or refusing to make any account of foreign railway fuel cars, or of leased or so-called private cars, or of their own fuel cars in the distribution of coal cars for, or affecting, interstate shipments of coal among the various coal operators along their lines.

"It is further ordered that said defendants be, and they severally are hereby, notified and required to establish, on or before said 1st day of July, 1908, and during a period of at least two years thereafter to maintain and enforce, a practice or regulation taking into consideration system cars, foreign railway fuel cars, leased or so-called private cars, and cars used for their own several fuel supplies in determining the distribution of coal cars among the various coal operators along their lines for, or as affecting, interstate shipments of coal; and if the number of foreign railway fuel cars, or leased or so-called private cars, or carrier's own fuel cars, or any or all of them, is less than the percentage or proportion of the mine to which such cars are consigned, leased, or assigned, then such mine must be given all the foreign railway fuel cars consigned to it, and all the cars owned or leased by it, and all the carrier's own fuel cars assigned to it, and a sufficient number of system cars to make up its proportion; but if the number of foreign railway fuel cars consigned to it, and the leased or so-called private cars delivered to it, and the carrier's own fuel cars assigned to it, is greater than its proportion, all such cars so consigned or assigned to it, or leased by it, must be delivered to it, and the available system cars must be divided among the other said coal operators on the basis of a changed percentage, because of the elimination of the mine or mines to which the foreign railway fuel cars, carrier's own fuel cars, or so-called private cars have been assigned; that is, the lessee of certain of said so-called private cars, and the consignee of foreign railway fuel cars, and the one to whom carrier's own fuel cars are assigned, must be given full and exclusive use of them, but must not be given, in addition thereto, a division of the system cars, except when its supply of the so-called private cars and of foreign railway fuel cars and of carrier's own fuel cars is less than its proportion of the total of available cars, including system cars, foreign railway fuel cars, carrier's own fuel cars, and so-called private cars."

Complainants, contending that their method of distribution is right, ask to have the enforcement of the commission's order enjoined.

The commission's report is found under the title of Traer v. Chicago & Alton Rld. Co. et al., 13 Interst. Com. Rep. 451. Other cases bearing upon the questions herein involved are Ry. Com. of Ohio et al. v. Hocking Valley Ry. Co. et al., 12 Interst. Com. Rep. 398; U. S. ex rel. Pitcairn Coal Co. v. B. & O. Ry. Co. (C. C.) 154 Fed. 108; Logan Coal Co. v. Pa. Ry. Co. (C. C.) 154 Fed. 497.

Winston, Payne, Strawn & Shaw, for complainant Chicago & A. R. Co.

J. M. Dickinson and W. S. Kenyon, for complainant Illinois Cent. R. Co.

L. A. Shaver, for defendant.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

## I. The So-Called Private Cars.

BAKER, Circuit Judge (after stating the facts as above). A charter duty of railroads is to provide cars, as well as tracks and locomotives. So far as the shipping public is concerned, it is a matter of indifference whether railroads discharge this duty by purchasing or by renting or by borrowing cars. But since no vehicle for transporting commodities in commerce can have any rights upon the tracks of a public carrier except under and by virtue of the carrier's charter, a shipper who is not also a lessor or lender of cars is interested in seeing that the carrier abstains from discriminations in conditions of service on account of the ultimate ownership of any of the instrumentalities used by it in the transportation of commodities in commerce. A shipper who owns cars is not entitled on that account, or on any account, to a preference in rates or in promptness of service. If his cars are used, all that he is entitled to is to be paid the just value of the use, whether measured by mileage or otherwise. If he has a contract with the carrier that calls for more, that contract is pro tanto void. In our judgment, therefore, the so-called private cars, if accepted by an interstate carrier for use by it in transporting a commodity in commerce, must be treated as constituting a part of the carrier's available commercial equipment.

It appears that certain shippers who own cars do no business outside of Illinois. In their behalf it is suggested that, even if private cars used in interstate commerce must be counted, the complainant carriers cannot be required to take into consideration the cars of shippers who do only an intrastate business.

Where federal authority exists, it is paramount. It exists here by virtue of the fact that complainants are interstate carriers. No practices on their lines can be permitted which favor local commerce at the expense of interstate and foreign commerce. In case of a conflict with a rule for the protection of interstate commerce, which has been duly made by the Interstate Commerce Commission, local Constitutions, statutes, orders of Railway Commissions, and regulations of the carriers, all must give way.

## II. Fuel Cars of Foreign Railroads.

The fact that these railroads are themselves common carriers has nothing to do with the case. Here they stand as mere consignees of a commodity that is transported in commerce by an interstate common carrier, which is forbidden to prefer them in any way above other consignees or shippers. In so far as complainants receive upon their roads the fuel cars of foreign railroads, they must count them as part of their own available commercial equipment.

## III. Fuel Cars of Complainants.

Coal is brought by complainants from mines along their roads under contracts whereby the coal is delivered to them at the mine tipples. Some is there loaded directly into the tenders of the locomotives. The remainder is taken in cars to the railroads' coal chutes. All is for the complainants' own consumption.

Commerce in these instances ends at the tipples. From there on, whether the coal goes directly or indirectly to the tenders, there is no consignor, no consignee, no shipper, no common carrier, no freight, no vehicle transporting a commodity in commerce. These cars are withdrawn from complainants' available commercial equipment, just as are flat cars while being used to distribute gravel for ballast. It is erroneous, therefore, to require complainants, in distributing their available commercial equipment among their shipping patrons, to take account of cars that are being used in hauling their own fuel.

But this does not mean that these cars do not affect the problem of an equitable distribution of commercial equipment. The mine operators are objects of interest under the interstate commerce law, not as diggers of coal, but as shippers who tender a commercial product for transportation by interstate common carriers. The basis, therefore, on which the mines in a district should be rated, is not their average output as a physical question, but the average output which they respectively tender for transportation in commerce. If two mines have capacities of producing 1,000 tons each per day, they should have the same rating if they are each offering the whole amount for transportation in commerce. But if one of these mines, by reason of exhaustion of a vein, or flooding of a shaft, or the operator's local consumption of his own fuel, can and does offer for transportation in commerce only 500 tons per day, equity requires that the carrier should rate it at only one half of the other mine. And we perceive no just ground for a difference, if the mine's diminished capacity comes from the carrier's act. While the carrier's cars that are being employed in hauling its own fuel are not a part of the available commercial equipment, yet the diminished capacity of the mine to tender coal for transportation in commerce should be taken into consideration, and computing the average number of the carrier's own fuel cars set out at a mine may be the easiest and surest way of gauging that mine's diminished capacity.

In our judgment, complainants are not entitled to relief against that part of the order which requires them to count the so-called private cars and the fuel cars of foreign railroads as available commercial equipment; but they are each entitled to an injunction against the enforcement of that part of the order which commands them to count their own cars that are being employed in hauling their own fuel as available commercial equipment, and against their being compelled to take such fuel cars into consideration, except as a means in determining the true capacities of the mines to tender coal to them for transportation in commerce.

Decrees will be entered accordingly.